UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RUTH LOUISE FRIEND JONES,

        Plaintiff,

        v.

REGIONAL ACCEPTANCE
CORPORATION, et al.,

        Defendants.

CIVIL ACTION NO. 25-CV-2226

(SAPORITO, J.)
(CARLSON, M.J.)

## MEMORANDUM

Now before the court is a report and recommendation of United States Magistrate Judge Martin C. Carlson, in which he recommends that the *pro se* plaintiff's complaint (Doc. 1) be dismissed. (Doc. 32).

The plaintiff filed this action on November 21, 2025, against Regional Acceptance Corporation ("Regional") and Truist Bank ("Truist") for their alleged unlawful actions concerning a 72-month retail installment sales contract with Regional to finance a 2016 Toyota Carolla. (Doc. 1). The plaintiff alleges, among other actions, that Regional continues to bill, collect payments on, and withhold title to the Toyota Carolla despite the sales contract between the parties reaching maturity in August 2022. (*Id.*, ¶ 2).  Moreover, the plaintiff alleges that the

defendants have furnished inconsistent and inaccurate credit information across consumer-reporting agencies, causing harm to the plaintiff. (*Id.*, ¶ 7). But as Judge Carlson notes in his report and recommendation, the action before the court is relatively simple despite the plaintiff's characterization of the underlying events.

In 2016, the plaintiff entered into a retail installment contract to purchase a 2016 Toyota Carolla, which called for the plaintiff to make seventy-two installment payments on the car loan. That contract was assigned to Regional. The agreement expressly provided as follows:

> HOW THIS CONTRACT CAN BE CHANGED, This contract, along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understanding are binding. Upon assignment of this contract, (i) only this contract and the addenda to this contract comprise the entire agreement between you and the assignee relating to this contract, (ii) *any change to this contract must be in writing and the assignee must sign it;* and (iii) no oral changes are binding.
>
> If any part of this contract is not valid, all other parts stay valid. *We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.*

(Doc. 1-3) (emphasis added). Judge Carlson found that the language of

the contract, by its terms, authorized Regional, as assignee, to amend the agreement through signed writings. Soon after, by her own admissions, the plaintiff became delinquent in her car payments, and consequently, Regional exercised its rights under the agreement to extend the time for the plaintiff to make payments on eight occasions in accordance with the contract. Despite those extensions, however, and after approximately 100 months after signing the original retail installment contract, the plaintiff still owed $3,721.75 by the Fall of 2025.

As Judge Carlson notes, the plaintiff's complaint stems from her belief that her loan obligations and Regional's contractual rights ended after seventy-two months. Therefore, the plaintiff believes that Regional reported false and inaccurate information about her to credit services because of the plaintiff's failure to pay off her car loan as required by the contract between the parties. But Judge Carlson found the plaintiff's contention to be unavailing, concluding that the plaintiff's federal claims under the Fair Credit Reporting Act ("FCRA") and the Truth in Lending Act ("TILA") fail based on that assertion.

Judge Carlson explained that a creditor's duties under the FCRA are only triggered when the information disputed by the debtor is

"incomplete or inaccurate." (Doc. 32, at 13) (quoting 15 U.S.C. § 1681s-2(b)). Nonetheless, Judge Carlson articulated that "the plain language of the retail installment sales contract signed by [the plaintiff] makes it clear that Regional may extend payment deadlines under this agreement to allow delinquent debtors, like [the plaintiff] to bring their accounts current." (*Id.*, at 14–15). Therefore, "there was nothing inaccurate about Regional's report that it did what the contract allowed it to do—it extended payment deadlines on this loan." (*Id.*, at 15). Moreover, Judge Carlson found that while the plaintiff believed that there were inaccuracies in her reports, "[t]he *consumer's* opinion as to whether her report is inaccurate or misleading is of no moment for purposes of the Court's analysis of an FCRA claim." (*Id.*, at 13) (quoting *George v. Transunion Corp.*, No. CV 22-4967, 2023 WL 5044956, at *2 (E.D. Pa. Aug. 8, 2023)) (emphasis in original). Judge Carlson recommends dismissal of the plaintiff's FCRA claim against Regional.[1]

---

[1] The plaintiff also argued that the reports concerning the payment deadline extensions were "inaccurate" because Maryland law, which governs the agreement, forbids credit extensions to borrowers like the plaintiff. Judge Carlson, however, noted that Maryland law allows the practice which often directly benefits borrowers. (Doc. 32, at 15) (citing Md. Code Ann., Com. Law § 12-1006).

Judge Carlson also recommends dismissal of the plaintiff's TILA claim against Regional. He found that while the TILA applies to initial credit offerings and certain types of re-finance decisions which materially alter the amount of a loan or interest rates on a loan, the clear regulatory text of the statute makes clear that "payment extensions and accompanying extension notices issued after the consummation of the retail installment sale contract are not covered by TILA and TILA's disclosure requirements are inapplicable to payment due-date extensions." (*Id.*, at 17) (citing *McNeal v. Exeter Fin. LLC*, No. 2:24-CV-165, 2025 WL 2426302, at *7 (M.D. Ala. July 14, 2025), *report and recommendation adopted*, No. 2:24-CV-165, 2025 WL 2423742 (M.D. Ala. Aug. 21, 2025)). Therefore, Judge Carlson concluded that the plaintiff's TILA claim fails as a matter of law because payment deadline extensions are not the type of events which trigger TILA's disclosure requirements.

Moreover, Judge Carlson recommends dismissal of the plaintiff's FCRA and TILA claims against Truist. Upon review of the complaint, Judge Carlson found that the plaintiff's claims against Truist were based on vicarious or *respondeat superior* liability as he could not identify any well-pleaded facts indicating Truist's direct involvement within the

action. (Doc. 32, at 10–11). But Judge Carlson noted that liability under the FCRA and the TILA cannot be premised solely upon vicarious responsibility or *respondeat superior*. *See Del Amora v. Metro Ford Sales & Servs., Inc.*, 206 F. Supp. 2d 947, 950 (N.D. Ill. 2002) ("The FCRA does not specifically provide for vicarious liability."); *see also Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 24 (D.D.C. 2012) (finding that "[a]bsent … specific factual allegations [of involvement], the plaintiff's complaint is insufficient to state a TILA claim."). Therefore, Judge Carlson concluded the plaintiff's claims against Truist fail as a matter of law.

Accordingly, because federal jurisdiction of the plaintiff's action is premised on federal claims that he recommends dismissing, Judge Carlson further recommends dismissing the remaining state law claims and declining to exercise supplemental jurisdiction over them. Moreover, having concluded that the plaintiff's claims fail on their merits, Judge Carlson recommends that the plaintiff's request for a declaratory judgment should be denied.

Both parties have filed objections to Judge Carlson's report and recommendation. *See* (Doc. 34); (Doc. 35). The plaintiff has filed thirteen objections to the report and recommendation. *See* (Doc. 35). Many of

these objections, however, invoke her belief that the extensions on the retail installment contract, and resulting consequences from those extensions, are unlawful. *See* Objection No. 1 (Doc. 35, at 5) ("[Plaintiff's] claim is that Defendants' own records do not prove a lawful remaining balance, do not reconcile the payment history, and do not establish authority to continue lien retention, credit reporting, collection activity, charge-off activity, and post-maturity enforcement."); Objection No. 2 (*Id.*, at 6) ("Defendants' own transaction history reflects at least ninety-one (91) payments on a seventy-two payment loan. That is at least nineteen payments beyond the original payment schedule."); Objection No. 4 (*Id.*, at 9) ("The issue is whether these alleged extensions, as used here, lawfully support continued collection, credit reporting, lien retention, charge-off activity, and account enforcement years after the original 72-month term."); Objection No. 5 (*Id.*, at 10) ("The issue is whether those cases justify dismissal where Defendants' own records show at least 91 payments on a 72-payment loan and unresolved record defects. They do not."); Objection No. 6 (*Id.*, at 11) ("[T]he very issue in dispute: that the balance, extensions, payment history, and post-maturity reporting were accurate."); Objection No. 7 (*Id.*, at 12) ("[Plaintiff's] TILA

theory is based on the cumulative post-maturity treatment of the loan, the absence of compliant post-maturity disclosures, and Defendants' alleged conversion of a fixed-term closed-end obligation into an indefinite activity account."). But as Judge Carlson explained in his report and recommendation, even viewing the plaintiff's allegations in the light most favorable to her, the plaintiff's complaint makes clear that she signed a retail installment contract with express language that allowed Regional to amend the contract to extend time for a party to make payments. *See* (Doc. 1-3). Here, Regional did just that. It extended the plaintiff's payment plan from 72 months to 100 months, and as a result, it reported the plaintiff's loan delinquencies for her failure to make timely payments. Therefore, regardless of how the plaintiff categorizes the events in the underlying action, Regional lawfully acted pursuant to the terms of the agreed-upon contract.

The plaintiff also objects to Judge Carlson's recommendation of dismissal of the plaintiff's claims against Truist based on vicarious liability. But the plaintiff's objections do not point to any allegations of Truist's specific involvement. Instead, they generally allege that Truist oversees Regional's servicing, collections, credit-furnishing, data-

management, compliance, and regulatory functions. (Doc. 35, at 15). Therefore, these objections reinforce Judge Carlson's finding that the plaintiff's claims against Truist are predicated solely on vicarious liability. Moreover, while the plaintiff objects to Judge Carlson's recommendation that the plaintiff's request for declaratory judgment be denied, the plaintiff fails to address the deficiencies identified in that report and recommendation.

The defendants also filed objections to Judge Carlson's report and recommendation. (Doc. 34). The defendants argue that because the plaintiff's complaint establishes diversity jurisdiction pursuant to 28 U.S.C. § 1332, the court should adjudicate the plaintiff's state law claims on the merits rather than decline to exercise supplemental jurisdiction over those claims. (Doc. 34, at 13). But because the plaintiff's complaint asserts only federal question jurisdiction in its body, and not diversity jurisdiction, we will adopt Judge Carlson's recommendation to decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

Therefore, we conclude that following an independent review of the report and the record, and having afforded "reasoned consideration" to the uncontested and contested portions of the report, *E.E.O.C. v. City of*

*Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017), we are satisfied "that there is no clear error on the face of the record," Fed. R. Civ. P. 72(b) advisory committee note to 1983 amendment. We find Judge Carlson's analysis to be well-reasoned and fully supported by the record and applicable law. Accordingly, the court will adopt the report and recommendation in its entirety as the decision of the court.

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The report and recommendation of Judge Carlson (Doc. 32) is **ADOPTED** in its entirety;

2. The defendants' motion to dismiss (Doc. 16) is **GRANTED**;

3. The plaintiff's motion for a preliminary injunction (Doc. 11) is **DENIED**; and

4. The Clerk shall mark this case as **CLOSED**.

Dated: June 18, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge

- 10 -